5 F.3d 546
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Andrew JOHNSON, Plaintiff-Appellant,
v.
CITY OF CHEYENNE, a governmental entity; Don Pierson, Chief
of Police for the Cheyenne Police for the Cheyenne Police
Department; Bill Stanford, Cheyenne Police Detective;
Cheyenne Police Department, Defendants-Appellees.
 No. 92-8079.
 United States Court of Appeals, Tenth Circuit.
 Aug. 26, 1993.
 
 1
 Before BALDOCK and KELLY, Circuit Judges, and CAUTHRON,* * District Judge.
 
 ORDER AND JUDGMENT[1]
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 3
 Plaintiff-appellant Andrew Johnson appeals from an order,[2] entered after an evidentiary hearing, dismissing his civil rights complaint brought pursuant to 42U.S.C.1981,[3] 1983, 1985(3), 1986, and the Fifth and Sixth Amendments to the U.S. Constitution. Because we conclude that plaintiff's constitutional rights were not violated, we affirm.
 
 
 4
 Plaintiff was arrested and charged on June 11, 1989, with an aggravated burglary and first degree sexual assault allegedly committed earlier that day. On June 13, 1989, the victim informed defendant-appellee George (Bill) Stanford, a Cheyenne Police Department detective, that she had found a pair of eyeglasses in her apartment. A preliminary hearing was held on June 29, 1989, at which plaintiff was present. Stanford testified that an unidentified pair of eyeglasses had been found in the victim's apartment.
 
 
 5
 On June 30, 1989, Jeannie Koepplinger, a nurse at the Laramie County Jail, completed a memo stating that plaintiff had been complaining for a few days of not having his eyeglasses. Plaintiff returned from the preliminary hearing with court papers stating that the Cheyenne Police Department had his eyeglasses. Stanford's name was on the papers. Plaintiff stated that since the police department was going to keep his glasses, the county could purchase him a new pair. He also threatened to sue the county for denying him medical care.
 
 
 6
 Koepplinger testified at a suppression hearing that plaintiff told her to call Stanford to get his glasses. She called Stanford, who brought the glasses to the jail and asked plaintiff if they were his. Plaintiff responded affirmatively. Stanford was aware that plaintiff was represented by counsel. He did not advise plaintiff of his Miranda rights, or ask him if he wanted his attorney present. Stanford's intent was to have plaintiff identify the glasses. Stanford testified at plaintiff's criminal trial that plaintiff identified the glasses as his own. Plaintiff was found guilty of both charges.
 
 
 7
 Following an unsuccessful appeal of his conviction, see Johnson v. State, 806 P.2d 1282 (Wyo.1991), plaintiff commenced the present civil rights action alleging inter alia that Stanford questioned him without giving him his Miranda warnings in a plan to obtain a coerced confession, and questioned him outside his attorney's presence in violation of his Fifth and Sixth Amendment right to counsel. The district court referred the matter to a magistrate judge, who held an evidentiary hearing on the merits of the complaint at which he denied defendants' motions for summary judgment. He then issued proposed findings of fact and recommended the complaint be denied on its merits.[4] The district court, adopting the magistrate judge's findings, held that plaintiff's rights were not violated because he voluntarily initiated contact with Stanford and because their conversation was not an interrogation. It dismissed the complaint.
 
 
 8
 Incorporating his objections to the magistrate judge's proposed findings into his appellate brief, plaintiff appears to challenge the finding that he initiated contact with Stanford.[5] This finding, which is supported by Koepplinger's state court testimony, is not clearly erroneous. We therefore uphold it. Fed.R.Civ.P. 52(a); Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985).
 
 
 9
 Plaintiff alleged in his first cause of action that Stanford violated his right to counsel under the Fifth Amendment. This right is founded in Supreme Court jurisprudence relating to the Fifth Amendment privilege against self-incrimination as enunciated in Miranda v. Arizona, 384 U.S. 436 (1966). McNeil v. Wisconsin, 111 S.Ct. 2204, 2208 (1991). However, the right to counsel under the Fifth Amendment only arises during custodial interrogation. Rhode Island v. Innis, 446 U.S. 291, 300 (1980). The term "interrogation" includes express questioning as well as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Id. at 301. The test focuses on the perspective of the suspect, not the intent of the police. Id. However, the intent of the police is not irrelevant. Id. at 301 n.7.
 
 
 10
 "In deciding whether particular police conduct is interrogation, we must remember the purpose behind [the Supreme Court's] decisions in Miranda and Edwards: preventing government officials from using the coercive nature of confinement to extract confessions that would not be given in an unrestrained environment." Arizona v. Mauro, 481 U.S. 520, 529-30 (1987). Thus, "a necessary element of compulsory self-incrimination is some sort of compulsion." Hoffa v. United States, 385 U.S. 293, 304 (1966); United States v. Franklin, 704 F.2d 1183, 1190 (10th Cir.), cert. denied, 464 U.S. 845 (1983).
 
 
 11
 We conclude that, from his perspective, plaintiff was not compelled or coerced by Stanford to identify his eyeglasses. He had already told Koepplinger that Stanford had his eyeglasses. He threatened to sue the county if his glasses were not returned. We agree with the district court that plaintiff was not subjected to interrogation. Consequently, he had no Fifth Amendment right to counsel.
 
 
 12
 Plaintiff also alleged in his first cause of action that Stanford violated plaintiff's Sixth Amendment right to counsel. Absent a valid waiver, the accused has the right to the presence of counsel during any interrogation after the first formal charge. Moran v. Burbine, 475 U.S. 412, 428 (1986).[6] While the Sixth Amendment right to counsel does not turn strictly on whether a statement was obtained during interrogation, but rather depends on whether incriminating statements were deliberately elicited by the prosecution, the concern is with interrogation or investigative techniques that are equivalent to interrogation. Kuhlmann v. Wilson, 477 U.S. 436, 457 (1986).[7] The Sixth Amendment is not violated if, by luck or happenstance, the State obtains incriminating statements after the right to counsel attaches. Id. at 459.
 
 
 13
 After hearing Stanford testify that the victim found a pair of eyeglasses at the crime scene, and that those glasses were currently unidentified, plaintiff voluntarily told Koepplinger that Stanford had his glasses and demanded that she contact him. The only useful purpose counsel could have served upon Stanford's arrival at the jail was to advise plaintiff not to tell Stanford the glasses were his. However, by this time, it was too late as plaintiff had already identified the glasses to Koepplinger. See Patterson v. Illinois, 487 U.S. 285, 298 (1988)(scope of right to counsel depends on usefulness of counsel to the accused at the proceeding at issue and dangers of proceeding without counsel). We hold that plaintiff's Sixth Amendment right to counsel was not violated.
 
 
 14
 Plaintiff alleged in his second cause of action that Stanford violated his constitutional rights by interrogating him without first giving him the Miranda warnings. The Miranda warnings are not themselves constitutionally protected rights, but rather are measures to insure protection of the right against self-incrimination. Duckworth v. Eagan, 492 U.S. 195, 203 (1989). However, 1983 only provides a cause of action for violations of the United States Constitution and federal statutes. Hill v. Ibarra, 954 F.2d 1516, 1520 (10th Cir.1992). For this reason, we held in Bennett v. Passic, 545 F.2d 1260, 1263 (10th Cir.1976), that the failure to give Miranda warnings does not subject a police officer to liability under 1983.
 
 
 15
 Nor could failure to give Miranda warnings create liability under 1985(3) and 1986. A claim under 1985(3) requires proof of a conspiracy that was motivated by a class-based, invidiously discriminatory animus. Dixon v. City of Lawton, 898 F.2d 1443, 1447 (10th Cir.1990). Plaintiff presented no evidence to this effect. Further, because plaintiff's 1986 claim is premised on the existence of a valid 1985 claim, Abercrombie v. City of Catoosa, 896 F.2d 1228, 1230 (10th Cir.1990), it must fail as well.
 
 
 16
 Plaintiff also appears to claim that Stanford violated his rights under Edwards v. Arizona, 451 U.S. 477 (1981). Edwards held that, once an accused has exercised his Fifth Amendment right to counsel in a custodial interrogation, he is not subject to further interrogation until counsel has been made available, unless he initiates further contact with the police. Id. at 484-85. Edwards is unavailing here because, like Miranda, it is a court-created rather than constitutionally mandated rule. See McNeil, 111 S.Ct. at 2208 (Edwards established second layer of prophylaxis for Miranda right to counsel). Additionally, Edwards only applies in the context of a custodial interrogation. 451 U.S. at 484. As previously explained, we agree with the district court that plaintiff was not subjected to interrogation.
 
 
 17
 Although failure to be advised of one's Miranda rights does not give rise to a 1983 claim, an actual violation of the Fifth Amendment privilege against self-incrimination does. See Cooper v. Dupnik, 963 F.2d 1220, 1243-44 (9th Cir.), cert. denied, 113 S.Ct. 407 (1992). However, plaintiff presented no evidence that his statement to Stanford was "actively compelled and coerced." Id. at 1243. Plaintiff's claim that Stanford coerced his confession is meritless.[8]
 
 
 18
 Plaintiff alleged in his third cause of action that Stanford and the City conspired to falsely prosecute him. However, he presented no evidence to support this claim. The district court properly rejected it.
 
 
 19
 Finally, plaintiff alleged in his fourth cause of action that Pierson, the City of Cheyenne, and the Cheyenne Police Department failed to adequately train and supervise Stanford and were deliberately indifferent to plaintiff's constitutional rights. Absent a constitutional violation by Stanford, there can be no liability for failure to train or supervise him. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Apodaca v. Rio Arriba County Sheriff's Dep't, 905 F.2d 1445, 1447-48 (10th Cir.1990). The district court properly rejected this claim.
 
 
 20
 Stanford and Pierson's motion to file an appendix is GRANTED. Plaintiff's motion to file a supplemental appendix is GRANTED. Plaintiff's motion for a copy of the evidentiary hearing transcripts is DENIED as moot.[9] The judgment of the United States District Court for the District of Wyoming is AFFIRMED. The mandate shall issue forthwith.
 
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3
 
 
 [2]
 On December 11, 1992, the district court filed an order dismissing the complaint. Plaintiff filed separate notices of appeal on December 18, 1992, and December 28, 1992. The district court then entered a judgment dismissing the complaint on February12, 1993. Pursuant to Fed.R.App.P. 4(a)(2), where as here no tolling motion is filed, a notice of appeal filed after the announcement of an order but before entry of the judgment is treated as filed after the entry of the judgment and on the day thereof
 
 
 [3]
 Plaintiff moved to dismiss his 1981 claim, conceding that his complaint did not contain allegations to support such a claim. R. Vol. I, Doc. 71. Although we have been unable to locate a ruling granting the motion, plaintiff has made no argument supporting his 1981 claim on appeal. We therefore deem that he has waived any challenge to dismissal of his 1981 claim
 
 
 [4]
 None of the parties objected to the procedure followed, and it is not raised as an issue on appeal
 
 
 [5]
 Plaintiff does not challenge the adequacy of the district court's review of his objections
 
 
 [6]
 No contention is made that plaintiff's Sixth Amendment right to counsel had not attached as of the time of his conversation with Stanford
 
 
 [7]
 The Supreme Court has held that the definitions of "interrogation" differ, depending on whether the Fifth or Sixth Amendment is at issue, due to the distinct policies underlying the two constitutional protections. Innis, 446 U.S. at 300 n.4
 
 
 [8]
 In light of our conclusion that plaintiff's constitutional rights were not violated, we need not address whether any violation was harmless error, or the consequences of such a determination
 
 
 [9]
 Plaintiff had already filed his reply briefs before he moved for a copy of the transcripts